IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| BAUTISTA CAYMAN ASSET COMPANY | |
|---|---|
| Plaintiff | CIVIL 17-1520CCC |
| vs | |
| TERRA II MC & P, INC.; LUIS ENRIQUE PEREZ PAGAN, his wife GLORIA VIRGINIA TAÑON ORTIZ and the conjugal partnership composed between them; JOSEPH MCCLOSKEY VAZQUEZ, his wife STACEY SUAREZ KILEY and the conjugal partnership composed between them; MCCLOSKEY, PEREZ & ASOCIADOS, INC. | |
| Defendants | |

**OPINION AND ORDER**

On April 18, 2017, Bautista Cayman Asset Company ("plaintiff" or "Bautista") filed a Complaint (d.e. 1) against Terra II MC & P, Inc.; Luis Enrique Pérez Pagán, Gloria Virginia Tañón Ortiz, and the conjugal partnership between them; McCloskey Pérez & Asociados, Inc.; and Joseph McCloskey Vázquez, Stacey Suárez Kiley, and the conjugal partnership between them ("defendants"), for collection of monies and the foreclosure of mortgages and other collateral.

Before the Court is plaintiff's Motion for Summary Judgment (**d.e. 41**) filed March 22, 2019 and defendants' Motion for Summary Judgment (**d.e. 34)**

filed February 12, 2019.  For the reasons set forth below, plaintiff's Motion is GRANTED and defendants' Motion is DENIED.

## I.     UNCONTESTED MATERIAL FACTS

The following material facts are uncontested:

1.     Terra II MC & P, Inc. ("Borrower") is a for-profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at #561, Summit Hills Development, Guaynabo, PR 00969, and its postal address is P.O. Box 9694, San Juan, Puerto Rico 00908-0694.

2.     Luis Enrique Pérez Pagán and his wife Gloria Virginia Tañón Ortiz and the Conjugal Partnership between them are guarantors of the Borrower. They are of legal age and residents of San Juan, Puerto Rico and their postal address is P.O. Box 363961, San Juan, Puerto Rico, 00936-3961.

3.     McCloskey Pérez & Asociados, Inc. is a pledgor in connection with the Borrower's debt in this case, and it is a for-profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico, and its postal address is P.O. Box 9694, San Juan, Puerto Rico, 00908-0694.

4.     Joseph McCloskey Vázquez and his wife Stacey Suárez Kiley and their Conjugal Partnership are guarantors of the Borrower (jointly with Pérez-Tañón, the "Guarantors").  They are of legal age and residents of San Juan, Puerto Rico and their postal address is P.O. Box 19804, San Juan, Puerto Rico, 00910-1804.

CIVIL 17-1520CCC              3

5.     On March 27, 2015, Bautista executed an agreement with the FDIC through which it acquired certain assets of Doral Bank ("Doral"), including, among others, the credit relationships between Doral and the defendants at issue in this suit.

6.     On February 24, 2006, the Borrower executed "Loan Agreement I" by which Doral provided the Borrower a revolving line of credit in the principal aggregate amount of $30,207,000, with a peak amount never to exceed $17,200,000, for the development and construction of 126 detached residential units of one or two stories in a project known as Terra del Monte I (the "Project") (d.e. 1-1).

7.     On January 18, 2008, Doral and the Borrower executed an amendment to Loan Agreement I in order to: (i) reduce to 78 the number of units composing the Project; (ii) reduce the aggregate principal amount of the loan to $27,087,046.17 and increase the loan peak amount to $19,200,000; and (iii) extend the Maturity Date to July 31, 2009 (d.e. 1-3).

8.     On November 3, 2010, Doral, the Borrower, McCloskey Pérez & Asociados, Inc., and the Guarantors executed an amended and restated loan agreement pursuant to which the Loan Agreement I was divided into the following two separate loans: (i) a construction loan with a maximum principal balance of $13,122,082.00, with a peak amount never to exceed the amount of $9,407,400 (the "Construction Loan") under loan number 80-00000460-1; and (ii) a junior loan with a maximum principal balance of $10,778,242 (the "Junior Loan") under loan number 80-00000460-2. The Construction Loan and

CIVIL 17-1520CCC								4

the Junior Loan are *pari passu* in regard to the security interest securing the loan and the same are cross-collateralized and cross-defaulted (d.e. 1-4).

9.	The November 3, 2010 amendments to the loan agreements provided that a Judgment by Consent would be executed for the benefit of the lenders in the event that the borrowers did not pay the full amount due on the maturity date of the Construction Loan or Junior Loan (d.e. 1-4).

10.	The Construction Loan bears interest at an annual rate equal to the prime rate, with a floor of 3.25%, and had a Maturity Date of October 31, 2012. The Construction Loan provided that 98% of the gross sales, less contract deposits, of the units of the Project would be remitted to Doral. The Junior Loan is an interest only loan facility bearing interest at an annual rate equal to the prime rate, with a floor of 3.25%, and had a Maturity Date of December 31, 2014. (d.e. 1-4).

11.	On October 29, 2012, Doral, the Borrower, and the Guarantors amended Loan Agreement I as follows: (i) increase the aggregate principal amount of the Construction Loan to $14,078,219.45; (ii) make available to the Borrower an additional non-revolving credit line in the aggregate principal amount of $501,000.00 (the "Construction Line"), which would also be *pari passu* with the Construction Loan and the Junior Loan; and (iii) extend the Maturity Date of the Construction Loan to July 31, 2013. The Construction Line was intended for construction of three additional units. (d.e. 1-7).

12.	In October 2013, Doral, the Borrowers, the Guarantors, McCloskey Pérez & Asociados, Inc., as Pledgor, and Doral Recovery II, LLC (as successor

CIVIL 17-1520CCC			5

of Doral), amended Loan Agreement I as follows: (i) reflect that all of Lender's rights, title and interest to the referenced loans were transferred to Doral Recovery II, LLC; (ii) extend the Maturity Date of the Construction Loan and the Construction Line to January 31, 2015; and (iii) to amend the definition of Loan Documents to include reference to said amendment. Pursuant to this amendment the Guarantors ratified the loan agreement and related documents, as amended (d.e. 1-9).

13. Each loan and amendment is evidenced by a promissory note executed by Borrower in favor of Doral, and subsequently endorsed in favor of Bautista (d.e. 1-2, d.e. 1-5, d.e. 1-6, d.e. 1-8).

14. The loan agreements and promissory notes are guaranteed by the following mortgage notes, among others:

(a) Mortgage Note payable to the order of Doral Financial Corporation, subsequently endorsed in favor of Bautista, in the principal amount of $13,000,000, due on demand, executed by the Borrower on May 24, 2005, and secured by the Deed of Mortgage Number 27 ("Mortgage I") executed by and between the Borrower and Doral on May 24, 2005 before Notary Public Francisco Pujol Meneses, in the principal amount of $13,000,000, constituted over property number 639 recorded in the Registry of the Property of Puerto Rico, First Section of Caguas, at page 11 of volume 12 of Cayey (hereinafter, the "Property 639"). Mortgage I was subsequently increased in the principal amount of $3,025,000.00 ("Mortgage Note I-B"), for a new aggregate amount of $16,025,000 (as increased, also referred to as "Mortgage I"), pursuant to Deed of Mortgage Number 9 executed by and between the Borrower and Doral on February 24, 2006 before Notary Public Francisco Pujol Meneses.

(b) Mortgage Note payable to the holder of the note, later endorsed in favor of Bautista, in the principal amount of $4,687,530.00, due on demand, authenticated under Affidavit Number 4,766 of Notary Public Alfredo Ortiz Almedina ("Mortgage Note II") and secured by Deed of Mortgage Number 117 ("Mortgage II") executed by the Borrower in

favor of the holder of the Mortgage Note II on May 24, 2005 before Notary Public Alfredo Ortiz Almedina, in the principal amount of $4,687,530.00, constituted over Property 639.

(c)     Mortgage Note payable to the bearer of the note, or to its order, subsequently endorsed in favor of Bautista, in the principal amount of $1,673,122.74, due on demand, authenticated under affidavit number 4929 of Notary Public Alfredo Ortiz Almedina ("Mortgage Note III") and secured by the Deed of Mortgage Number 27 (Mortgage III") executed by and between the Borrower and Doral on February 24, 2006 before Notary Public Alfredo Ortiz Almedina, in the principal amount of $1,673,122.74, constituted over the following properties, and each responding for the amount set forth below: (i) Property number 3,985 recorded in the Registry of the Property of Puerto Rico, First Section of Caguas, at page 17 of volume 110 of Cayey ("Property 3,985") responds for the amount of $707,859.69; (ii) Property number 1,767 recorded in the Registry of the Property of Puerto Rico, First Section of Caguas, at page 1 of volume 31 of Cayey ("Property 1,767") responds for the amount of $622,058.41 and (iii) Property number 2,672 recorded in the Registry of the Property of Puerto Rico, First Section of Caguas, at page 35 of volume 391 of Cayey ("Property 2,672") responds for the amount of $343,204.64.

(d)     Mortgage Note payable to the order of Doral, subsequently endorsed in favor of Bautista, in the principal amount of $505,000.00, due on demand, executed on February 24, 2006 by the Borrower, authenticated under affidavit number 4,476 of Notary Public Francisco Pujol Meneses ("Mortgage Note IV") and secured by Deed of Mortgage Number 13 ("Mortgage IV") executed by and between Borrower and the Lender on February 24, 2006 before Notary Public Francisco Pujol Meneses, in the principal amount of $505,000.00, constituted over Property 3,985.

(e)     Mortgage Note payable to the order of Doral, subsequently endorsed in favor of Bautista, in the principal amount of $250,000.00, due on demand, bearing interest at a fixed rate of 15% per annum, executed on February 24, 2006 by the Borrower, authenticated under affidavit number 4475 of Notary Public Francisco Pujol Meneses ("Mortgage Note V") and secured by Deed of Mortgage Number 11 ("Mortgage V") executed by and between Borrower and the Lender on February 24, 2006 before Notary Public Francisco Pujol Meneses, in the principal amount of $250,000.00, constituted over Property 2,672.

(f)     Mortgage Note payable to the order of Lender, in the principal amount of $420,000.00, due on demand, bearing interest at a fixed rate

of 15% per annum, executed on February 24, 2006 by the Borrower, authenticated under affidavit number 4474 of Notary Public Francisco Pujol Meneses ("Mortgage Note VI") and secured by the Deed of Mortgage Number 12 ("Mortgage VI") executed by and between Borrower and the Lender on February 24, 2006 before Notary Public Francisco Pujol Meneses, in the principal amount of $420,000.00, constituted over Property Number 1,767.

(g)     Mortgage Note payable to the bearer, subsequently endorsed in favor of Bautista, in the principal amount of $2,000,000.00, due on demand, bearing interest at prime rate, executed on January 18, 2008 by the Borrower, authenticated under affidavit number 30,449 of Notary Public Manuel Correa Calzada ("Mortgage Note VII") and secured by Deed of Mortgage Number 1 ("Mortgage VII") executed by the Borrower on January 18, 2008 before Notary Public Manuel Correa Calzada, in the principal amount of $2,000,000.00, constituted over the following properties, and each responding for the amount set forth below: (i) Property number 3,985 responds for the amount of $860,000; (ii) Property number 1,767 responds for the amount of $740,000 and (iii) Property number 2,672 responds for the amount of $400,000.

(h)     Mortgage Note payable to the order of Doral, subsequently endorsed in favor of Bautista, in the principal amount of $1,500,000.00, due on demand, bearing interest at a fixed rate of 12% per annum, executed on July 29, 2005 by the Borrower, and authenticated under affidavit number 4698 of Notary Public Elaine Villanueva Martínez ("Mortgage Note VIII") and secured by Deed of Mortgage Number 101 ("Mortgage VIII") executed by and between Borrower and the Lender on July 29, 2005 before Notary Public Elaine Villanueva Martínez, in the principal amount of $1,500,000.00, constituted over the Property 639.

(d.e. 1-10-1-25, d.e. 1-30).

15.    The mortgaged properties are described in the Registry of Property as follows:

**Property 639**

RUSTIC: Parcel comprised of 99.9227 cuerdas, equivalent to 392,736.18008 square meters, bordering on the NORTH with the Estate of Pedro Vázquez, the Estate of Manuel Núñez and Maximino Zayas, today Rene Flores, Ana Torres, Ramonita Rosa Ortiz, and Municipal Government of Cayey; on the SOUTH, Parcel "A" segregated in case number 02LI4-00001-00809, parcel dedicated to public use and Guavate River; on the EAST, with

lands of Máximo Zayas, today Esteban Ocasio. Edgardo Palacios, José Molinary, Emilio Valines, Julio Merced, Edwin Aponte, Bernardo Soler, Alfredo Meléndez, Enrique Vals, Felix Rivera, Ruben Torres Rodríguez, Beatriz Creek, and Ramón Orraca; and on the WEST, lands of Maximo Zayas, Toribio Santiago, Agapito Reyes, Rafael Vega, Vicente Vélez, Bartolo Vélez, Maria Vélez, Angeles Hernández, and Pedro Hernández, today, Guavate River, Cristo La Roca Church, parcel of public use, segregated lot, Hector Santiago, and Nicolas Peña.

Segregated from this property a parcel of 236,168.142 square meters, today property number 23,414, according to deed number 3367, executed in San Juan, Puerto Rico, on October 23, 2007, before Notary Jorge García Soto, on February 12, 2012, leaving a non-described remnant of 156,568.03808 square meters, equivalent to 39.8352 cuerdas, on February 1, 2012.

Property Number 639, is recorded at page 11 of volume 12 of Cayey, Registry of Property of Puerto Rico, First Section of Caguas. (d.e. 1-38, d.e. 42-1).

**Property 3,985**

RUSTIC: Parcel of land consisting in 16.50 cuerdas, equivalent to 6 hectares, 51 acres, 78 centiares, located in the Vega Ward of the Municipality of Cayey, Puerto Rico, and bordering, on the NORTH, with lands of Juan Orraca; on the SOUTH, with lands of Valeriano Ortiz, formerly, today Lands Authority of the People of Puerto Rico, Fermín del Valle, and Aurelio López, formerly, today Lucas De Jesus Ramos; on the EAST, with Juan Orraca; and on the WEST, with Juan Orraca.

Property Number 3,985, is recorded at page 17 of volume 110 of Cayey, Registry of Property of Puerto Rico, First Section of Caguas. (d.e.1-39, d.e. 42-2).

**Property 1,767**

RUSTIC: Consisting in 14½ cuerdas, equivalent to 5 hectares, 69 ares, and 20 centiares, in the Las Vegas Ward of Cayey, Puerto Rico, bordering, on the NORTH, with Maximino Zayas, the People of Puerto Rico, the Guavate neighborhood road, and lands of the Estate of Pedro Vázquez and Escolástica Vázquez; on the SOUTH, with lands of Teresa Aponte and Isaias Cruz, separated by the Guavate River; on the EAST, with José Nieves Aponte; and

on the WEST, with lands of Isaias Cruz, separated by the Guavate River and Valeriano Ortiz.

Property Number 1,767, is recorded at page 1 of volume 31 of Cayey, Registry of Property of Puerto Rico, First Section of Caguas. (d.e. 1-40, d.e. 42-3).

**Property 2,672**

RUSTIC: Unnamed property, located in the Vega Ward of Cayey, Puerto Rico, consisting in 8.00 cuerdas, equivalent to 31,440.00 square meters. Bordering on the NORTH and EAST, with lands of Maximino Zayas; on the SOUTH and WEST, with the Guavate River.

Property Number 2672 is recorded at page 35 of volume 391 of Cayey, Registry of Property of Puerto Rico, First Section of Caguas. (d.e. 1-41, d.e. 42-4).

16.    To secure the obligations under Loan Agreement I, the Borrower and Doral executed pledge agreements in favor of Doral as to each mortgage note. (d.e. 1-26-1-31).

17.    On November 3, 2010, the Borrower ratified its pledge agreements regarding Mortgage Note I-A, I-B, IV, V, VI, and VII, and extended its security interest thereof to cover the obligations under Loan Agreement I. (d.e. 1-32-1-36).

18.    On February 5, 2008, the Borrower filed before the Department of State a Financing Statement registered under #2008009289 in favor of Doral, under Affidavit Number 30,454, in accordance with Chapter 9 of the Commercial Transactions Act. The Financing Statement covers movable property relating to Property No. 3,985, Property No. 1,767 and Property No. 2,672, as detailed therein. (d.e. 1-37).

19.   On February 24, 2006, Pérez-Tañon and McCloskey-Suarez each executed a "Continuing and Unlimited Guaranty" to jointly and severally guarantee the payment of all the obligations of the Borrower under the loan agreements and promissory notes agreements. (d.e. 1-42-1-43).

20.   On January 18, 2008, Pérez-Tañón and McCloskey-Suarez each executed a "Continuing and Unlimited Guaranty", jointly and severally guarantee the payment of all of the obligations of the Borrower under the loan agreements and promissory notes. (d.e. 1-44-1-45).

21.   On November 3, 2010 Pérez-Tañón and McCloskey-Suarez each executed an "Amended and Restated Guaranty and Agreement" ("Amended Loan Agreement") ratifying the February 24, 2006 guarantees. (d.e. 1-46, d.e. 1-47).

22.   To further secure the obligations under Loan Agreement I, on February 24, 2006, the Borrower and Doral executed an "Assignment Agreement-Option and Sale Agreements" (the "Assignment Agreement I") where the Borrower assigned to Doral all of its rights, title and interest in and to all sale agreements and option agreements detailed in Exhibit A to the Assignment Agreement I. (d.e. 1-48).

23.   On February 24, 2006, the Borrower and Doral executed an "Assignment Agreement Permanent Financing Commitment Letter" (the "Assignment Agreement II") Pursuant to the Assignment Agreement II, the Borrower assigned to Doral a continuing lien in all of the Borrower's right, title and interest in and to the commitment issued by HF Mortgage Bankers ("HF")

and accepted by the Borrower prior to the date thereof to finance the purchase of certain units of the Project to third parties. (d.e. 1-49).

24.   To secure the obligations under Loan Agreement I, on February 24, 2006, McCloskey-Suárez, as pledgors, the Borrower and Doral executed an "Assignment of Rights and Security Interest of First Rank Agreement" (the "Assignment Agreement III") (d.e. 1-50); Pérez-Tañón, as pledgors, the Borrower and Doral executed an "Assignment of Rights and Security Interest of First Rank Agreement" (the "Assignment Agreement IV") (d.e. 1-51); McCloskey Pérez & Asociados, Inc., the Borrower and Doral executed an "Assignment of Rights and Security Interest of First Rank Agreement" (the "Assignment Agreement V") (d.e. 1-52); and the Borrower and Doral executed an "Assignment of Plans and Drawings, Construction Contracts, Permits and Warranties" ("Assignment Agreement VI") (d.e. 1-53).   Each of these agreements served to pledge the collateral defined therein in favor of Doral.

25.   On November 3, 2010, the Borrower ratified Assignment Agreements I, II, IV, and IV and extended its security interest thereof to cover the amended obligations. (d.e. 1-54-1-57).

26.   The Federal Deposit Insurance Corporation (the "FDIC") and Bautista signed an Assignment and Assumption Agreement whereby Bautista acquired certain credit facilities as part of Doral Bank's receivership proceedings, including the Assignment Agreements I-VI and their corresponding Ratifications, the Guaranties, the Financing Agreements, the Mortgage Notes, the Mortgages, the Pledge Agreements, the Ratification

Agreements, the Financing Statement and the Real Estate Collateral. (d.e. 42-7).

27.     Defendants defaulted in that they failed to pay the amount due on the maturity dates of the Construction Loan and Junior Loan under the 2010 Amended Loan Agreement (d.e. 42-7).

28.     On June 13, 2016, Bautista sent a Notice and Declaration of Events of Default to the Defendants stating that they had not complied with their obligations under the Financing Agreements. Bautista demanded full payment of the outstanding amounts within ten (10) days, that is, by June 23, 2016. Borrowers did not make any payment. Bautista declared all of the obligations under the Financing Agreements as immediately and automatically due. (d.e. 1-58).

29.     The Borrower remains in default (d.e. 42-7).

30.     The amount due on the loans as of February 26, 2019 is $24,898,205.56, calculated as follows:

> **Junior Loan**: $10,778,241.64 for principal, plus $5,555,575.65 for accrued interest, $66,230.07 for late fees, $889,803.73 for default interest and $26,610.00 for insurance, for a total of $17,316,461.09.
>
> **Construction Loan**: $4,229,944.95 for principal, plus $832,247.15 for accrued interest, $34,281.64 for late fees, $2,136,065.27 for legal expenses and $349,205.46 for default interest, for a total of $7,581,744.47. (d.e. 42-7).

## II.    RULE 56 STANDARD FOR SUMMARY JUDGMENT

The Court may grant a movant's motion for summary judgment when "the pleadings, answers to interrogatories, and admissions on file together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); NASCO, Inc. v. Pub. Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "In this context, 'genuine issue' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." United States v. One Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir. 1992). Therefore, a factual issue is material if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment. U.S. Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 953 (1st Cir. 1987).

Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)).

### III.    DISCUSSION

The plaintiff and defendants have filed dueling Motions for Summary Judgment. The parties agree that the Amended Loan Agreement (d.e. 1-4) is valid and that defendants failed to repay the loans in full on their determined

Maturity Dates. As there is no dispute as to the material facts, only the following issues of law remain: (1) whether judgment by consent is plaintiff's sole remedy under the contract; and (2) whether defendants have materially defaulted such that they are not entitled to release from personal liability.[1]

### A. Judgment by Consent

Defendants claim that plaintiff's sole remedy under the Amended Loan Agreement is to file a judgment by consent in the Court of First Instance of Puerto Rico, and that summary judgment in their favor and dismissal are therefore warranted (d.e. 34). Defendants rely on the following language to support their position:

> (a) . . . If Borrower is unable to pay the entire amount of the Construction Loan on the Maturity Date Construction, then **Borrower hereby agrees** that the Real Property-Terra del Monte I will be transferred in to the Lender or Lender's designee on said date pursuant to a consent judgment in an ordinary foreclosure process. **To facilitate the rights of the Lender, Borrower will execute** within 30 days from the Closing Date a consent judgment regarding the final voluntary disposition of the Real Property-Terra del Monte I to be prepared by Lenders counsel; which consent shall be signed by Borrower and its counsel and the Lender and its counsel, and after all parties have signed the consent judgment, said document shall be sealed and held in escrow by Lender. **Borrower and the Guarantor hereby agree** that if on the Maturity Date Construction Loan the Construction Loan is not paid in full, including any accrued non-default interest, **the Lender shall be entitled** to file with the court of first instance with competent jurisdiction over the matter the aforementioned consent judgment without any further notification to or consent from either Borrower and/or Guarantors.

---

[1] Defendants have failed to challenge the amount due on the loans alleged by plaintiffs, $24,898,205.56, instead relying solely on the argument that plaintiff's only remedy is Judgment by Consent and that defendant is entitled to release and discharge of liability (d.e. 45, para. 22).

. . .

> (d) Judgment by Consent. As indicated in either Section 2.07(a) or 2.07(b) hereof, the **Borrower and Guarantors agree** that in each instance under Section 2.07(a) or 2.07(b), as applicable, to request the applicable Court of First Instance in the Commonwealth of Puerto Rico, by way of a Motion to Inform Settlement Agreement and Request for Judgment by Consent ("Estipulación Transaccional y Solicitud de Sentencia por Consentimiento" or "Borrower Consent Judgment") to enter judgment incorporating the terms and conditions of this Amended Loan Agreement . . .

(d.e. 1-4 § 2.07, "Payments").

Contrary to defendants' arguments, the language of Section 2.07 does not suggest that the Lender is required to file the Judgment of Consent if Borrow cannot make full payment on the date of maturity. The stated intent of the consent judgment is "[t]o facilitate the rights of the Lender," and the Lender "shall be entitled" –not required– to file the Judgment of Consent. Section 2.07 imposes duties on the borrower and guarantor, but not the Lender. This language suggests that Judgment by Consent is not plaintiff's sole remedy, but may be exercised at his discretion.

Plaintiff points to further evidence that its remedies are not limited by the Amended Loan Agreement, and asks the Court to grant summary judgment in its favor. Plaintiff cites the following provisions:

> Upon the occurrence of an Event of Default, Lender may take any one or more or all of the following actions:
>
> (i) Declare the outstanding principal balance of the Promissory Note No. 1, Promissory Note No. 2 and all other Obligations, plus accrued interest thereon and all fees and costs, if any, to be immediately due and payable.

> (ii) Terminate this Agreement and all of Lenders' obligations hereunder and thereunder, including the obligation of Lender to make additional advances hereunder or thereunder and accelerate in full or in part any and all obligations or indebtedness thereunder.
>
> (iii) **Exercise all rights and remedies provided by applicable law, this Agreement, the other Loan Documents and any and all other documents, instruments and agreement executed by Borrower in favor of Lender.**
>
> […]

(d.e. 1-4, § 6.02, "Remedies") (emphasis added)

> If any such Event of Default occurs, Lender shall be entitled to exercise any and all rights and remedies including, without limitation, foreclosure against the collective collateral for the Loans in any order and in any combination as Lender shall desire, it being expressly understood and agreed by Borrower that the collateral securing any part of the Loans is collateral for either the Construction Loan and the Junior Loan. **Nothing in this Agreement shall limit the rights and remedies of Lender against Borrower after the occurrence of an Event of Default under the [sic] any loan documents.**

(d.e. 1-4, § 12.17, "Cross-Collateral/Cross Default") (emphasis added).

These provisions explicitly state that plaintiff's remedies are not limited to a consent judgment in the event of default. An "event of default" under the contract includes the "failure of Borrower . . . to make any principal or interest payment when due" (d.e. 1-4, § 6.02, "Events of Default"). The failure to pay the balance of the loan on its maturity date clearly falls under this definition, and defendants admit they have failed to make such payment.

The Court finds that plaintiff's remedy is not limited to filing a consent judgment in the Court of First Instance, and that plaintiff is entitled to exercise any of the remedies listed in Section 6.02.

### B. Release

The Court must next determine whether defendants are entitled to release from liability pursuant to Section 2.07 of the Amended Loan Agreement:

> (b) . . . Provided that (i) the Borrower or Guarantors do not bring any new action, cause of action, judgment, suit or claim against the Lender or its officers, directors, shareholders, agents, representatives, successors and assigns and attorneys (the "Lender Related Parties") based on the Amended Loan Agreement or Loan Documents; (ii) the Borrower and Guarantors do not file from Bankruptcy protection prior to that date which is 120 days after the Release Date; (ii) **the Borrower or Guarantors take no actions to contest this Amended Loan Agreement, the Borrower Consent Judgment, or the foreclosure sale or process;** (iv) the Borrower and Guarantor are not in Material Default, and (v) as long as Borrower and Guarantors comply with all the terms and conditions set forth herein, including the agreement for an expedited foreclosure process, and take no action in violation or breach of any other agreements with Lender, then on the Release Date, and in compliance with all of the terms hereof, all amounts due and owing under the Loan Documents, will be deemed paid in full and Borrower shall have no further liability hereunder. On the Release Date and upon of satisfaction and compliance with all if the terms and conditions of the instant Amended Loan Agreement, the Lender shall release and discharge the Guarantors from any and all liability for the Loan, and their obligations under the respective Guaranties (except with respect to any environmental liability that may exist), respectively. Such release and discharge shall be evidenced by the execution of Release Agreements (collectively the "Release Agreements") in the form of Exhibits D(1) and D(2) hereto . . . Until the Release Date, Guarantors shall remain liable to Lender for all amounts due and owing under the Loan Documents.

(d.e. 1-4 § 2.07).

Defendants argue that they are entitled to a release and discharge from further liability under this provision once a foreclosure sale is conducted. However, defendants have taken actions to contest the Amended Loan Agreement and the foreclosure process, which disqualifies them from release and discharge under 2.07(b). Specifically, in their Answer (d.e. 30) defendants raised the affirmative defenses that plaintiff has caused damage requiring offset; that defendants are excused from compliance with the Amended Loan Agreement; that plaintiff failed to mitigate its damages; and that the foreclosure action is barred by the statute of limitations. In addition, defendants sought summary judgment to dismiss plaintiff's foreclosure action (d.e. 34). As defendants have violated the conditions listed at Section 2.07, the Court finds they are not entitled to release and discharge under the Amended Loan Agreement.

## IV. CONCLUSION

Having considered defendants' Motion for Summary Judgment (**d.e. 34**) and Statement of Material Facts (d.e. 33) filed February 12, 2019 and plaintiff's Opposition (d.e. 39) and Opposing Facts (d.e. 40) filed March 22, 2019 (d.e. 39), the Motion is DENIED.

Having considered plaintiff's Motion for Summary Judgment (**d.e. 41**) and Statement of Material Facts (d.e. 42) filed March 22, 2019 and defendants' Opposition (d.e. 46) and Opposing Facts (d.e. 45) filed April 12, 2019; the

CIVIL 17-1520CCC                19

Motion is GRANTED.  Judgment shall be entered in favor of the plaintiff by separate order.

    SO ORDERED.

    At San Juan, Puerto Rico, on January 9, 2020.


                                      S/GUSTAVO A. GELPÍ
                                      Chief United States District Judge